IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| B.S. | : | |
| | : | |
| PLAINTIFF, | : | CIVIL ACTION FILE NO.: |
| | : | |
| V. | : | _____ |
| | : | |
| JAY SHREE MAA DURGA, INC. | : | |
| d/b/a BAYMONT BY WYNDHAM | : | |
| HINESVILLE | : | |
| | : | |
| DEFENDANT. | : | |

**COMPLAINT**

Matthew B. Stoddard
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com

**Attorney for Plaintiff**

1

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 3

PROCEDURAL ISSUES ................................................................................................. 3

B.S. IS TRAFFICKED FOR SEX AT THE HOTEL ...................................................... 4

COUNT 1:      TVPRA CLAIMS ................................................................................. 6

CAUSATION AND DAMAGES .................................................................................... 8

PRAYER FOR RELIEF ................................................................................................. 10

## INTRODUCTION

1. Defendant Jay Shree Maa Durga, Inc. has owned and managed the Baymont by Wyndham Hinesville hotel located at 773 Veterans Parkway, Hinesville, Georgia 31313 (the "Baymont") since April of 2009.

2. In June 2015, B.S. – then a sixteen-year-old girl – was repeatedly trafficked for sex at the Baymont by two men known only as "Big Head" and "T" (the "Traffickers.")

## PROCEDURAL ISSUES

3. Given the nature of the case, B.S. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed full names to defense counsel or will immediately upon identification of defense counsel. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff to proceed anonymously. Upon information and belief, Defendant will consent to Plaintiff proceeding without publicly disclosing her name.

4. Defendant can be served through Rajan Patel, registered agent at 410 Pear Orchard Rd, Hinesville, Georgia 31313.

5. Defendant was properly served with process in this matter.

6. Defendant is subject to the jurisdiction and venue of this Court.

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

8. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Liberty County Georgia which is within the Southern District of Georgia. *See* 28 U.S.C. § 1391.

## B.S. IS TRAFFICKED FOR SEX AT THE HOTEL

9. In 2015, B.S. met Big Head and T at a Wal-Mart while she was still attending high school. B.S. was sixteen years old.

10. She left Wal-Mart with the men and went to a house with them.

11. There, B.S. and the men smoked marijuana together.

12. Upon information and belief, the marijuana was laced with some other drug that rendered B.S. unconscious. When she came to, she was inside of a hotel room and handcuffed to the bed.

13. The Traffickers forced B.S. to use drugs that rendered her in and out of consciousness.

14. The Traffickers had guns and caused B.S. to fear for her life.

15. The Traffickers continually sold B.S. as a sex slave to buyers at the Baymont.

16. B.S. was sexually assaulted many times while at the Baymont by various "Johns."

17. The Traffickers took the commercial sex act proceeds.

18. For the duration of the stays, the Traffickers used a portion of the proceeds from the commercial sex acts to book lodging at the hotel for the next night.

19. Upon information and belief, the Traffickers would use Defendant's WIFI network to post advertisements for B.S. to perform sex acts, and men would thereafter rape B.S. because of these advertisements. Upon information and belief, the Traffickers paid for the use of Defendant's WIFI network either through the room rental fees or a separate charge.

20. The Traffickers would not let the cleaning staff clean the rooms where B.S. was performing commercial sex acts. Instead, either the Traffickers or B.S. (at the Traffickers'

direction) would ask Defendant's cleaning staff for towels and sheets. These requests for towels and sheets were made multiple times each day, and Defendant's staff always complied.

21. B.S. was forced (through coercion, violence, and threats of violence) to have sex with men in exchange for money in rooms at the hotel that her Traffickers rented from Defendant.

22. The Traffickers took the money from the sex acts and used it to re-rent hotel rooms from Defendant, and then they again forced (through coercion, violence, and threats of violence) Plaintiff to have sex with men in exchange for money in the hotel rooms.

23. Defendant's staff and agents observed the following signs and symptoms of trafficking from B.S. and participated in a venture with the trafficker as follows:

   a. malnourishment, poor hygiene, fatigue, sleep deprivation, bruising, cuts, and other physical injuries;

   b. lack of freedom of movement and constant monitoring by older men;

   c. no control over or possession of money;

   d. "uniforms" for a trafficking victim such as very high heels and cheaply made dresses that cover very little of a person's body;

   e. constant and excessive requests for towels and sheets to housekeeping;

   f. prohibition of some staff members to enter the hotel rooms;

   g. constant dirty sheets and towels with excessive bodily fluid and blood on them found in the rooms and many more towels and sheets that one person would use;

   h. large numbers of used condoms in the rooms;

   i. rooms rented daily by the same trafficker who would frequently pay with cash;

   j. a trafficker renting multiple rooms over and over again;

   k. extended stays by the victims without those victims having personal possession's other than their "uniforms";

l. a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving; and

m. victims and traffickers being steered to certain areas of the property and only given rooms in a particular wing of the property such that the Defendant was aiding in hiding the trafficking from police and others who might report it to the police and was thereby furthering the venture.

## COUNT 1: TVPRA CLAIMS

24. Defendant "knowingly benefited" from Plaintiff's trafficking because:

    a. the Traffickers rented rooms at the hotel;

    b. the Traffickers used the hotel WIFI network;

    c. Defendant collected revenue from the room rentals and the use of the WIFI network; and

    d. the victim was advertised for sex through the WIFI network and forced to have sex in the rooms.

25. Defendant took part in a common undertaking involving risk or profit with the Traffickers because:

    a. Plaintiff's Traffickers would pay in cash for one night at a time, booking the next night's stay before check-out time;

    b. Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

    c. Defendant was directly renting rooms to the same traffickers – Plaintiff's Traffickers;

    d. Defendant had commercial dealings with Plaintiff's Traffickers and then continued to rent rooms to Plaintiff's Traffickers.

    e. Defendant had a continuous business relationship with Plaintiff's Traffickers such that Defendant established a pattern of conduct with those Traffickers.

    f. After renting the room for the first night, Plaintiff's Traffickers had prior commercial dealings with Defendant and then reinstated those dealings.

  g. Defendant associated with Plaintiff's Traffickers in an effort to force Plaintiff to serve Defendant's business objectives.

  h. Defendant owned, operated, and maintained the hotel in question.

  i. victims and traffickers being steered to certain areas of the property and only given rooms in a particular wing of the property such that the Defendant was aiding in hiding the trafficking from police and others who might report it to the police and was thereby furthering the venture.

26. Plaintiff's Traffickers' undertaking with Defendant violated the TVPRA with respect to Plaintiff because:

  a. the Traffickers recruited the Plaintiff to participate in commercial sex acts at Defendant's hotel by, among other things, drugging and kidnapping her and then forcing Plaintiff to participate in commercial sex acts;

  b. the Traffickers harbored the Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the property;

  c. the Traffickers transported the Plaintiff to Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

  d. the Traffickers maintained Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

  e. The commercial sex acts occurred at Defendant's hotel in rooms rented by the trafficker;

  f. the Traffickers used force, threats of force, fraud, and coercion to cause Plaintiff to participate in commercial sex acts at Defendant's hotel including beating the Plaintiff;

  g. the Traffickers threatened the Plaintiff with violence and used this tactic to cause Plaintiff to engage in commercial sex acts at Defendant's hotel;

  h. the Traffickers coerced the Plaintiff to participate in commercial sex acts at Defendant's property by threatening Plaintiff with physical harm if the Plaintiff did not engage in commercial sex acts at Defendant's hotel;

  i. the trafficker knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited the Plaintiff to engage in commercial sex acts in the hotel rooms that the Traffickers rented from Defendant;

    j.    Buyers came to Defendant's hotel, purchased the "right" to have sex with Plaintiff from the Traffickers, and then the buyers raped the Plaintiff at Defendant(s)' hotel;

    k.    The Traffickers were aware or should have been aware that B.S. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendant's hotel;

    l.    The Traffickers utilized Defendant's wireless internet connection to post advertisements of Plaintiff for the commercial sex acts; and

    m.    Other actions to be proven at trial.

27. The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling Plaintiff in commercial sex acts, the use of the internet to post sex advertisements, the use of interstate highways to transport Plaintiff to the hotels by her Traffickers (and their associates), and other reasons to be proven at trial.

28. As shown above, Defendant had – at minimum – constructive knowledge that Plaintiff was being trafficked for sex at the property. *See also* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

29. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the hotel during the relevant period.

## CAUSATION AND DAMAGES

30. As a direct and proximate result of Defendant's acts and omissions Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

31. Defendant is joint and severally liable with Plaintiff's trafficker, and his associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

32. Defendant is liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

33. Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a. Personal injuries;

    b. Past, present and future pain and suffering;

    c. Disability;

    d. Disfigurement;

    e. Mental anguish;

    f. Loss of the capacity for the enjoyment of life;

    g. Loss of earning capacity;

    h. Lost wages;

    i. Diminished capacity to labor;

    j. Incidental expenses;

    k. Past, present and future medical expenses;

    l. Permanent injuries;

    m. Attorney's fees;

    n. Punitive damages; and

   o. Consequential damages to be proven at trial.

34. Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

35. Defendant is also liable for paying Plaintiff's attorneys fees and litigation expenses pursuant to the TVPRA.

36. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against the Defendant and for the following:

1) That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from each Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6) Punitive damages be imposed upon each Defendant;

7) Treble damages be imposed upon each Defendant;

8) Plaintiff be provided with a trial by jury; and

9) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

This 7th day of November, 2024.


        Matthew B. Stoddard
Ga. Bar No. 558215
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
joe@legalhelpga.com

**Attorney for Plaintiffs**